IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:10-CV-21-BO

| | |
|---|---|
| TERRY PIGFORD | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER | ) |
| OF SOCIAL SECURITY | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on Plaintiff and the Government's Motions for Judgment on the Pleadings. The Plaintiff's motion is GRANTED and the Government's Motion is DENIED.

## FACTS

Plaintiff applied for Social Security disability benefits for back, shoulder, and hip pain on December 1, 2006 with an alleged onset date of June 1, 2006. Plaintiff was 45 years old at the time of her onset date. She has a high school education, and has previously worked as a retail cashier, restaurant cashier, and cook. (Tr. 146, 185-86). In 2006, she attempted to work in her husband's landscaping business but states she was unable to perform the duties because of her pain. (Tr. 186).

The Plaintiff has testified to the following facts: Habitual pain caused Plaintiff to undergo spinal surgery in October 2006, but she still experiences pain. (Tr. 350). Plaintiff experiences

1

lower back pain every day, and sometimes experiences pain throughout her entire body. (Tr. 30). The pain in her lower back radiates into her left leg intermittently and is exasperated by standing or walking. (Tr. 31). She also experiences pain in her neck if she holds it down to view material on a desk or turns it far enough to see traffic behind her while driving. (Tr. 30-1). Plaintiff can only sit for five to ten minutes before needing to get up and change position. (Tr. 26, 32). In addition, Plaintiff can stand only about five minutes before needing to sit down, and estimated that she can walk less than a quarter of a mile before needing to find somewhere to lie down to take pressure off of her spine. Every day, she spends several hours lying on the couch or in a recliner. (Tr. 26, 28, 32.)

Plaintiff can lift no more than five pounds. (Tr. 26, 31-2). If she bends over to pick up something light, she is unsteady, so she tends to stoop instead. (Tr. 33-4). Her left hand is weak and causes her to drop items such as pots in the kitchen. (Tr. 34, 38). She only uses her right hand for the computer. (Tr. 35).

Plaintiff testified that pain affects her concentration. (Tr. 35). She takes medication for anxiety and usually averages a panic attack every other day, brought on by stress. (Tr. 36-7). After an attack, she has to lie down for three to four minutes and does not regain normalcy for another hour. (Tr. 37). Pain medication helps her pain but does not eliminate it. She takes Vicodin three to four times a week, and cannot drive when she takes it because it makes her drowsy. (Tr. 32, 33, 38). Plaintiff also takes Lyrica daily for pain and takes Trazodone at night to help her sleep. (Tr. 33, 38). She also uses heat to sooth her pain, which sometimes helps. (Tr. 33).

2

Plaintiff's claim was denied at the initial and reconsideration levels. A hearing was held before an administrative law judge on April 6, 2009 and the ALJ issued an unfavorable decision on June 10, 2009.

The ALJ found that the Plaintiff was not gainfully employed under step 1, and had "degenerative disc disease, status post cervical spine discectomy and fusion with residual effects, and anxiety," which constituted severe impairments under step 2. However, the ALJ found that Plaintiff's condition did not meet or equal a statutory listing under step 3. (Tr. 11-13).

The ALJ concluded that the Plaintiff had the residual functional capacity to perform a "limited range of light work" with an ability to lift, carry, push and pull twenty pounds occasionally and ten pounds frequently, an ability to "sit, stand and/or walk up to six hours each out of an eight hour work day when allowed a sit/stand option at the workstation as needed," an "ability to frequently reach with both upper extremities, [and] an ability to frequently, but not continuously, handle and finger with the left nondominated hand." The ALJ also found the Plaintiff had "an inability to climb ladders, ropes or scaffold, balance for safety, crawl, or work at unprotected heights, around dangerous machinery or in extreme humidity and wetness, an ability to occasionally climb stairs and ramps, stoop, kneel, and crouch, and a limitation to performing simple, routine, repetitive tasks." The ALJ concluded under step 4 that the plaintiff could return to her past work as a cashier.

The Plaintiff requested review by the Appeals Council, which denied her request. This Court held an evidentiary hearing on November 18, 2010.

## DISCUSSION

The Court concludes that the Administrative Law Judge erred by failing to give controlling weight to Plaintiff's treating Physician, Dr. George Huffmon. The Court also finds that the AJL's conclusions were not supported by substantial evidence. According, the AJL's decision is reversed.

### Standard of Review

In reviewing a final decision of no disability by the Social Security Administration Commissioner, the Court must determine whether the Commissioner's decision is supported by substantial evidence under 42 U.S.C. § 405(g), and whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law.

### Disability Test

The Social Security disability analysis follows five steps. An ALJ must consider (1) whether the Plaintiff is engaged in substantial gainful activity, (2) whether the Plaintiff has a severe impairment, (3) whether the Plaintiff has an impairment that meets or equals a condition contained within the Social Security Administration's official list of impairments, (4) whether the Plaintiff has an impairment which prevents past relevant work, and (5) whether the Plaintiff's impairment prevents the performance of any substantial gainful employment. 20 C.F.R.§§ 404.1520, 1520a.

The plaintiff bears the burden for steps one, two, three, and four, while the Defendant shoulders the burden for step five. If the Plaintiff shows by a preponderance of evidence that he has a statutory impairment under step three, he is conclusively presumed to have a disability and the analysis ends. Bowen v. Yuckert, 482 U.S. 137, 141 (1987). Alternatively, if the plaintiff

4

fails to prevail under step three, she can still show she has an impairment that prevents her from continuing past work under step four. If so, the burden shifts to the Defendant to establish that the plaintiff is able to perform another job available in the national economy under step five. Id. at n. 5.

### Dr. Huffmon's Testimony.

The ALJ improperly discounted Dr. Huffmon's testimony.

A treating physician's opinion is entitled to controlling weight when the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and. . . not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2). Even when a treating physician's opinion is not entitled to controlling weight, an ALJ must still consider and assess the opinion according to the following factors: 1) examining relationship; 2) treatment relationship; 3) evidentiary support; 4) consistency with the record as a whole; 5) whether the doctor is a specialist; and 6) other factors (e.g., the amount of understanding the physician has with our disability program and evidentiary requirements). 20 C.F.R.§ 404.1527(d). In addition, the opinion of a treating physician is entitled to more weight than the opinion of a non-treating physician. Id.

Dr. George Huffmon has been plaintiff's treating neurosurgeon since October 17, 2006. On Dec 11, 2006, Dr. Huffmon performed a C5-C6 anterior cervical diskectomy and fushion with left illac crest bone and marrow aspirate on the Plaintiff. (Tr. 350). He continued to treat Plaintiff after the surgery, and also referred Plaintiff to a pain management center, where Plaintiff was treated by Dr. Arora. (Tr. 350). Dr. Huffmon is familiar with Social Security medical criteria, and has lectured on the topic. (Tr. 351).

5

In an August 20, 2008 signed Declaration, Dr. Huffmon stated that while Plaintiff had benefited from pain management, Plaintiff's pain was "increased by bending, crawling, prolonged standing or sitting, and by lifting more than 10 pounds." (Tr. 352). He also stated "[s]he could not sit, stand, or walk more than two hours in an eight-hour day." (Tr. 352). In addition, Dr. Huffmon labeled Plaintiff's statements that she has to sit in a recliner several hours each day as "fully credible and documented by clinical evidence." Id. Dr. Huffmon concluded that Plaintiff had not been capable of gainful employment since he first met her, and that she met Section 1.04 of the Listing of Impairments for musculoskeletal impairments (Tr. 351-52).

The ALJ discounted Dr. Huffmon's testimony and seemed to give his opinions no weight. (Tr. 15-16). The ALJ stated that Dr. Huffmon's conclusions were not supported by treatment notes, were inconsistent with Plaintiff's description of her daily activities, and were inconsistent with the two disability medical examiners' conclusions. The Court disagrees, and finds that the ALJ erred when it failed to give Dr. Huffmon's testimony controlling weight.

### Treatment notes

The ALJ stated that Dr. Huffmon and Dr. Arora's post operation treatment notes were inconsistent with Dr. Huffmon's conclusions. The ALJ focused on a May 2007 note, which stated that Plaintiff's pain was only 1 out of 10 and that she exhibited a 95% improvement, as well as an August 2007 note, which again stated the Plaintiff's pain was only 1 out of 10. The ALJ also cited an October 2007 note that said Plaintiff was "doing well" with pain medication, and a February 2008 note that mentioned the Plaintiff was taking care of her grandson. In

6

addition, the ALJ pointed to a report of a physician assistant who wrote that the Plaintiff said that she was doing well most of the time, and had no other complaints or concerns. (Tr. 15).

The ALJ's summary is not an accurate portrayal of the treatment notes. The ALJ failed to acknowledge that through 2007, Plaintiff's pain medication was continually being adjusted to afford her relief. Indeed, Plaintiff still reported pain at levels of 5,6 and 7 out of 10 in October and November 2007. (Tr. 335, 336). In addition, Dr. Huffmon's observed in September 2008 that while Plaintiff was "doing relatively well," she was "not completely fused," had "[s]lightly decreased range of motion in all planes," and had pain in her hands such that it hurt her to grip things. (Tr. 354). That Plaintiff's neck was not completely fused by September 16, 2008 is highly significant in assessing the meaning of Dr. Huffmon's phrase "doing relatively well." Perhaps most importantly, the ALJ failed to consider that the medical records continuously showed that Plaintiff's condition was improving because she was avoiding activity, resting, and lying down. (Tr. 201, 230, 338, 341, 343).

The treatment notes are thus entirely consistent with Dr. Huffmon's conclusions. In addition, the notes in no way support the ALJ's finding that the Plaintiff had residual functional capacity to "lift, carry, push and pull twenty pounds occasionally and ten pounds frequently, an ability to "sit, stand and/or walk up to six hours each out of an eight hour work day when allowed a sit/stand option at the workstation as needed."

### The Two Disability Examiners

The ALJ also implied that Dr. Huffmon's testimony was not entitled to weight because it was inconsistent with the conclusions of two disability medical consultants. These examiners reviewed the medical evidence and concluded that Plaintiff was capable of lifting up to fifty

7

pounds, standing, sitting, and walking up to six hours in an eight-hour workday, and pushing and pulling in an unlimited manner with her arms and legs (Tr. 253 60, 324-31).

It is well established that treating physicians opinions are given greater weight than the testimony of non-treating physicians. 20 C.F.R. § 416.927(d)(2). Indeed, while Dr. Huffmon personally treated Plaintiff for over two years, theses examiners never even met Plaintiff. Even the ALJ specifically said she had "not given [consultants'] opinions significant weight based on additional evidence received at the hearing level." (Tr. 16). Thus, the opinions of these state examiners cannot constitute the "substantial evidence" necessary to discredit Dr. Huffmon's testimony. 20 C.F.R. § 416.927(d)(2).

### Plaintiff's description of activities

The ALJ also found that Dr. Huffmon's conclusions were inconsistent with the Plaintiff's description of her daily activities. The ALJ stated that Plaintiff "cooks, shops at the drug store and grocery store, dusts, does the laundry, pays her bills, keeps her check book and runs errands …walks on a regular basis and does household chores." (Tr. 12, 16). The AJL also noted that the Plaintiff takes care of her grandson and attends church twice monthly. (Tr. 12, 16). The ALJ's summary of Plaintiff's testimony however, is misleading.

Plaintiff testified that she sometimes picks up a prescription or a few items at the grocery store, but if she wants to do a week's worth of grocery shopping, her husband or son has to go with her, and she sits and waits for part of the time. (Tr. 28-9). She does only a little housework, including dusting, and does no vacuuming, mopping or sweeping. (Tr. 29-30). When she does laundry, she is unable to carry the laundry basket. (Tr. 29). She is unable to do any yard work. (Tr. 30). She cooks with her husband, but watches over the preparation and cooking from a chair.

8

(Tr. 38-9). While she attends church twice a month, she has to bring a pillow to lean on in the pew and has to sit in the back so she can get up and down as needed. (Tr. 40).

Plaintiff's caring for her four year-old grandson is also physically restricted. She takes her grandson to preschool three days a week, and while at home, she watches him play, blows bubbles with him in the yard, plays video or computer games, colors, and spends time with him "watching a lot of cartoons." (Tr. 23-4, 27-8). She does not pick up her grandson. (Tr. 24). Plaintiff's son helps her care for the child. (Tr. 22).

Additionally, Plaintiff spends several hours every day lying in bed or in a recliner. (Tr. 26, 28, 32, 201, 230, 338, 341, 343).

The ALJ also erred in stating that Plaintiff had an "infrequent need for prescription pain medication" that contradicted her "allegations of disabling pain." (Tr. 15). The records, however, show that Plaintiff does in fact take prescription pain medication Lyrica on a daily basis. (Pl. Mem. p. 25; Tr. 33, 143, 187, 333-38, 356). Plaintiff also takes Vicodin three to four times a week on her worst days. (Tr. 33, 38).

The Plaintiff's daily activities are thus entirely consistent with Dr. Van Huffman's conclusion that the Plaintiff is not capable of gainful employment, and do not support the AJL's findings of residual functional capacity.

### Dr. Huffmon's opinion is entitled to controlling weight

Thus, the ALJ erred is discounting Dr. Huffmon's testimony as it was not contradicted by "other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2). To the contrary, it was supported by "medically acceptable clinical and laboratory diagnostic techniques," represented Dr. Huffmon's detailed Declaration (Tr. 349), his post surgical treatment notes (Tr.

341- 44, 354), as well as Dr. Arola's notes. (Tr. 336- 338). Accordingly, Dr. Huffmon's opinion should enjoy controlling weight and the ALJ's residual functional capacity finding was not supported by substantial evidence. 20 C.F.R. § 416.927(d)(2).

The Court thus finds that the Plaintiff meets Section 1.04 of the Listing of Impairments for musculoskeletal impairments (Tr. 351-52) under step 3. Alternatively, the Court finds that the Plaintiff satisfied her burden under step 4 to show that she cannot perform past work as a cook or cashier, and the government has failed to carry its burden to show she can preform other work in the national economy under step 5.

## CONCLUSION

The Court reverses the decision of the ALJ, and finds that the Plaintiff is in fact disabled and qualifies for disability benefits. The Plaintiff's motion for Judgment of the Proceedings is GRANTED.

SO ORDERED, this 29 day of November, 2010.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE